**SO ORDERED.**

**SIGNED this 21st day of July, 2021.**



*Dale L. Somers*
Dale L. Somers
United States Chief Bankruptcy Judge

**Designated for print publication**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

In re:

Leora May Taylor,

                   **Debtor.**

Case No. 16-40873
Chapter 13

**Memorandum Opinion and Judgment
Denying Trustee's Motion to Amend Chapter 13 Plan**

The Chapter 13 Trustee (the "Trustee") moves under § 1329(a)[1] to

amend Debtor Leora May Taylor's Chapter 13 plan, confirmed in 2016, to pay

all allowed claims in full through turnover of a portion of a payment received

by Debtor in 2021 from the settlement of a claim for a personal injury she

---

[1] 11 U.S.C. § 1329(a). All references in the text to title 11 shall be cited to the
section number only.

suffered postpetition in August 2019 (the Motion).[2] The Trustee contends: (1) the settlement proceeds received by Debtor are property of the estate under § 1306; (2) § 1329 permits modification to increase payments to holders of unsecured creditors; and (3) the best interest of creditors test of § 1325(a)(4), which is applicable to post confirmation plan modifications, compels payment of unsecured creditors in full. Debtor opposes the Motion.[3] The Court denies the Trustee's Motion, finding that property acquired by the Debtor because of the postpetition injury is not included in the application of the best interest of creditors test to the modified plan proposed by the Chapter 13 Trustee.[4]

---

[2] Doc. 47. The Chapter 13 Trustee, Jan Hamilton, appears personally. This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). A motion to amend a plan is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(L). There is no objection to venue or jurisdiction over the parties.

[3] Doc. 55. Debtor appears by Kristina S. Zhilkina-Crump.

[4] The § 1325(a)(4) best interest of creditors test is the only § 1325(a) confirmation standard addressed by the Trustee, and the Court therefore has not considered additional standards, such as good faith.

2

## I.    Findings of Fact[5]

Debtor filed her proposed Chapter 13 plan with her Chapter 13 petition on August 8, 2016. The plan provides for monthly payments of $175 to pay the following: $310 in court filing fees; $2600 in attorney fees; $5011 plus interest for a 2009 Ford Focus; $250 plus interest for a mattress; and statutory trustee fees. The plan made no provision for distributions to unsecured creditors. The plan was confirmed on October 19, 2016, and has not been amended. The plan has no definite term, but in order to pay the specified classes of creditors the plan is scheduled to run approximately fifty six months. The plan includes the following standard provision:

> 6. PROPERTY OF THE ESTATE:
>
> a. In addition to the property specified in 11 U.S.C. § 541, property of this bankruptcy estate includes all property acquired after the filing of the bankruptcy petition, including earnings. Except as otherwise provided, Debtor will remain in possession of all property of the estate.
>
> b. All property of the estate will vest in Debtor at discharge or dismissal of the case.

On January 29, 2021, Debtor filed a Motion for Appointment of Professional, requesting the appointment of an attorney to represent Debtor

---

[5] The relevant facts are undisputed. They are supported by the docket entries and a joint stipulation filed by the parties. Doc. 69.

3

to recover on a claim arising from personal injury she sustained on August 21, 2019, after this case was filed and the plan confirmed. An order granting that motion was entered March 2, 2021.

Two days after Debtor's filing of the motion and prior to completion of payments under the plan,[6] the Trustee filed his Motion to amend the plan to provide for payment in full of all unsecured creditors and requesting turnover of proceeds from the Debtor's personal injury claim sufficient to fund those payments. Debtor objected.

On February 8, 2021, Debtor filed a motion to approve a $295,000 gross settlement of her personal injury claim, with $141,357.90 net proceeds payable to her.[7] On February 11, 2021, Debtor amended her motion to approve the settlement to include a request that approximately $20,000 of the proceeds be placed in escrow with her counsel until the Trustee's Motion to

---

[6] The Trustee has provided an affidavit from an administrator in his office (doc. 73-1), to which Debtor does not object. It shows 57 months as the length of the plan. As March 30, 2021, the date of the affidavit, four months of payment remained owed to complete the plan. These payments would be disbursed to trustee's fees and attorney's fees.

[7] The amount of the underlying settlement is not in dispute.

4

amend the plan is resolved.[8] The parties agreed that the remaining

settlement proceeds could be released to the Debtor in the meantime.

## II.    Analysis

### A.    Positions of the Parties

The Trustee's position that the plan should be amended to designate

approximately $20,000 of the settlement proceeds for payment to creditors

begins with the premise that the settlement proceeds are property of the

estate under § 1306(a) and § 541. Debtor does not challenge this position. The

Trustee then argues that his Motion should be granted because § 1329(a)

permits, upon request of the Chapter 13 Trustee, amendment of a confirmed

plan to increase payments and incorporates § 1325(a)(4), the best interest of

creditors test ("best interest test"). Under that test, the plan must provide

payments to unsecured creditors in an amount not less than they would

receive in a Chapter 7 liquidation. The Trustee asserts that the

postconfirmation postpetition settlement proceeds must be included in the

hypothetical liquidation.

---

[8] The Trustee filed a limited objection, to ensure that the amount from the settlement to be held in escrow is sufficient to pay all allowed claims in the bankruptcy in full. The amount needed to pay all remaining allowed claims in full as of March 16, 2021, was $19,533.85. This amount will change as plan payments are made and if attorney fees are added.

5

Debtor responds to the Trustee's Motion with several arguments, including the contention that the best interest test should not include consideration of the settlement proceeds.[9] The Court finds that Debtor is correct.

## B.    The Controlling Code Sections and Leading Case Law

The Trustee's Motion is filed under § 1329(a)(1). It provides:

> (a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to----
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

Section 1329(b)(1) provides that "the requirements of section 1325(a) of this title apply to any modification under subsection (a)." Section 1325(a) enumerates plan confirmation standards, which include the best interest test in subsection (a)(4). That test requires:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount

---

[9] Docs. 55 and 72. Debtor's additional arguments are: (1) the Trustee has not shown cause to modify the plan after the applicable commitment period of § 1329(c); (2) she has completed payments as required under § 1329(a); and (3) the Trustee has not shown feasability, since she has need for the settlement funds for ongoing medical expenses. Because the Court decides this case in favor of Debtor as a matter of law on the basis that the settlement proceeds are not included in the best interest test, these additional defenses are not addressed.

that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

The application of the best interest test requires comparison of two calculations. The first is the value, as of the "effective date of the plan," of the property to be distributed to each unsecured creditor during the case. The second is the amount that would be paid on each allowed unsecured claim if the debtor's estate were liquidated "on such date" in a hypothetical Chapter 7 case.[10] When the test is applied to a plan filed with the Chapter 13 petition, this Court has held that the "effective date of the plan" is the date of filing the Chapter 13 petition.[11]

The Trustee relies on § 1306 as statutory authority to include the settlement proceeds in the calculation of the best interest test for the amended plan. Section 1306(a) provides that "property of the estate includes, in addition to the property specified in section 541" all property specified by § 541 "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted."

---

[10] *In re Goudreau*, 530 B.R. 783, 786 (Bankr. D. Kan. 2015) (citing *In re Dewey*, 237 B.R. 783 (10th Cir. BAP 1999)).

[11] *Id*. at 788.

7

The Trustee cites three cases in support of his interpretation of the best interest test under which the postpetition postconfirmation settlement is included in the best interest calculation. The first is *Barbosa,*[12] in which the Chapter 13 trustee moved to modify the debtors' confirmed plan to compel the debtors to increase dividends to unsecured creditors after the sale of prepetition investment property for an amount substantially in excess of the stipulated value ascribed to it when the plan was confirmed. When granting the motion and holding that the best interest test supported modification, the bankruptcy court held that the "effective date of the plan" in § 1325(a)(4) is the effective date of the modified plan.[13] Reliance was placed upon Keith Lundin's Chapter 13 treatise and the 1977 legislative history of § 1325(a)(4), which states "the application of the liquidation test must be redetermined at the time of the confirmation of the modified plan."[14]

Numerous cases have allowed modifications of a confirmed Chapter 13 plan to provide for payments to unsecured creditors because of a debtor's postpetition receipt of property. The Trustee relies on two of them, *Nott*[15] and

---

[12] *In re Barbosa*, 235 B.R. 540, 552 (Bankr. D. Mass. 1999), *aff'd, Barbosa v. Solomon*, 243 B.R. 562 (D. Mass. 2000), *aff'd*, 235 F.3d 31 (1st Cir. 2000).

[13] *Id.*

[14] *Id.* at 553 (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 431 (1977)).

[15] *In re Nott*, 269 B.R. 250 (Bankr. M.D. Fla. 2000).

8

*Villegas*.[16] *In Nott*, the Chapter 13 Trustee moved to modify the debtor's confirmed Chapter 13 plan following the debtor's receipt of a postconfirmation inheritance of between $270,000 and $300,000. When applying the best interest test to the proposed modified plan, the court followed *Barbosa* and held "that the 'effective date of the plan' should be the effective date of the modified plan, rather than the effective date of the initial plan."[17] It also determined that under § 1306, the debtor's postpetition postconfirmation inheritance was property of the estate on the effective date of a modified plan and would be included in the amount that unsecured creditors would receive under a hypothetical Chapter 7 liquidation. The *Nott* decision agreed with *Barbosa* that it would be "anomalous to disregard the postconfirmation acquisition of property when applying the 'best interests of creditors' test . . . to modification of a chapter 13 plan."[18]

In *Villegas,* the post petition windfall was the postconfirmation receipt of settlement of a postpetition personal injury claim to one of the debtors. The court allowed the Chapter 13 trustee's motion to modify the confirmed plan to provide that the settlement proceeds, less expenses, be paid to unsecured

---

[16] *In re Villegas*, 573 B.R. 844 (Bankr. W.D. Wa. 2017).

[17] *In re Nott*, 269 B.R. at 255.

[18] *Id.* at 258.

9

creditors, after payment of administrative claims. As to satisfaction of the best interest test, the court cited *Barbosa* and held that if an asset comes into the estate after confirmation "that asset must be valued as of the date of any modification for purposes" of the best interest test.[19]

But there are cases holding that postpetition postconfirmation assets are *not* included in the best interest test for purposes of approval of a modified plan. In *Forbes*,[20] a creditor, the former spouse of the debtor, appealed to the Eighth Circuit Bankruptcy Appellate Panel from a bankruptcy court's approval of an amended plan on the grounds that the court erred in disregarding the debtor's windfall from settlement of a cause of action that arose postpetition and postconfirmation in its consideration of the best interests test. The panel declined to reverse. Its analysis affirming the bankruptcy court started with the observation that the "Code does not provide for 'confirmation' of a modified plan; rather the plan as modified becomes the plan if it is not disapproved."[21] Therefore, the effective date of the plan is not altered by plan modification. After noting the case law conflict of whether "on the effective date of the plan" as used in § 1325(a)(4) means the effective date

---

[19] *In re Villegas*, <u>573 B.R. at 849</u>.

[20] *Forbes v. Forbes (In re Forbes)*, <u>215 B.R. 183</u> (8th Cir. BAP 1997).

[21] *Id.* at 188.

of the original plan or the effective date of the plan as modified, it followed

Eighth Circuit precedent adopting the former interpretation. As to whether

the windfall should be included for purposes of the liquidation analysis, the

panel observed that the best interest test focuses on a hypothetical liquidation

under Chapter 7, which is guided by § 541 and the schedules, rendering the

more expansive definition of property of the estate under § 1306 irrelevant.

The decision therefore concluded that the existence of the settlement proceeds,

which arose postpetition, were properly excluded from the liquidation analysis

under the best interest test.

    In *Sanchez*,[22] the debtor sustained injuries in a traffic accident after she

filed for relief under Chapter 13. Her liquidation analysis submitted in

support of her proposed plan did not include her potential personal injury

claim. The Chapter 13 trustee objected. After noting that the claim would be

included in the estate under § 1306, the court framed the issue as whether the

hypothetical liquidation test should be based only on property included in the

Chapter 13 estate case under § 541, or should also include the additional

property included in the Chapter 13 estate under § 1306. Afer discussing both

*Barbosa* and *Forbes*, the court confirmed the debtor's plan. It concluded that in

a Chapter 7 proceeding, the trustee would not be able to liquidate a personal

---

    [22] *Sanchez v. Sanchez (In re Sanchez)*, <u>270 B.R. 322</u> (Bankr. D.N.H. 2001).

11

injury claim that arose postpetition and accordingly such a claim should not be included in the estate for purposes of a hypothetical liquidation analysis in a Chapter 13 case.

As illustrated by the foregoing cases, answering the question whether for purposes of approval of a modified plan the proceeds of Debtor's postpetition postconfirmation personal injury claim are included in the estate when applying the best interest test is not easily answered. The first problem is that "effective date of the plan" is not defined by the Code. Is it the effective date of the original plan, which in this court is generally the date of the filing of the Chapter 13 petition, or is it the date of the proposed amended plan? The second question is what Code section defines the property to be included in the hypothetical liquidation as of that date. Is it the estate property defined by § 541 applied as of the date of filing? Does it include property within the scope of § 1306, which provides that property of the Chapter 13 estate includes, in addition to property specified in § 541, property acquired after the commencement of the Chapter 13 case? Is § 348(f) to be considered? That section provides that upon good faith conversion from a Chapter 13 case to a Chapter 7 case, the estate of the converted case "shall consist of property of the estate as of the date of filing, that remains in the possession or is under

12

the control of the debtor on the date of conversion." The Court endeavors to answer these questions below.

### C. The Effective Date of the Plan

The Court turns first to determining whether the effective date of the plan is the effective date of the original plan or the effective date of the plan as modified. *Barbosa*, the case relied upon by the Trustee, is the leading case on the question. It holds that the effective date is the effective date of the modified plan. Two retired bankruptcy judges of this district have followed *Barbosa* when applying the best interest test to a plan modification when the issue was valuation of property that was included in the Chapter 13 estate when the case was commenced. Former Kansas Bankruptcy Judge Nugent in *Auernheimer*[23] followed *Barbosa* and allowed debtors to modify their Chapter 13 plan to reduce the payments to unsecured creditors because of a postpetition decline in the value of their unencumbered personal property and their receivables being uncollectible. Judge Nugent noted that courts have split on the issue of the effective date of the plan. After discussing *Barbosa* and *Forbes*, he found that *Barbosa* better interprets the interaction between § 1329(b) and § 1325(a)(4), "by giving effect to § 1325(a)(4) yet recognizing that a

---

[23] *In re Auernheimer*, <u>437 B.R. 405</u> (Bankr. D. Kan. 2010).

13

modified plan becomes the plan."[24] He noted "[t]his is particularly so where, as in this District, the normal practice is that property of the estate does not vest in the debtor until discharge."[25] Further, he found that the *Barbosa* interpretation dovetails with § 348(f), which provides that valuations of property in a Chapter 13 case do not carry over to a converted Chapter 7 case. What the debtors proposed to return to their unsecured creditors in their amended plan was "an accurate reflection of what the creditors might hope to receive in a chapter 7 liquidation were debtor to file their case or convert the case to chapter 7 today."[26]

In *Davenport*,[27] former Kansas Bankruptcy Judge Karlin also found *Barbosa* better reasoned than *Forbes*. The case arose from the Chapter 13 trustee's motion for approval of an amended plan requiring turnover of proceeds remaining from the debtor's postpetition sale, made without court approval, of a 1/6 interest in real property for more than 15 times the original appraised value. Judge Karlin identified the issue as whether for purposes of the best interest test the liquidation value of the estate should be measured as

---

[24] *Id.* at 409.

[25] *Id.*

[26] *Id.*

[27] *In re Davenport*, No. 08-41213, 2011 WL 6098068 (Bankr. D. Kan. Dec. 7, 2011).

14

of the effective date of the original plan or as of the effective date of an amended plan, thereby accounting for the change in value. She adopted the approach of *Barbosa* and Judge Nugent in *Auernheimer*. She reasoned that adoption of the date of the amendment to the plan as the effective date promotes the purpose of the § 1325(a)(4) best interest test "to ensure that creditors are not treated any worse in a Chapter 13 proceeding than they would be treated in a Chapter 7 liquidation."[28] She further noted that under § 348(f) if the debtors case were converted to a Chapter 7 proceeding, the real property would be revalued and any prepetition nonexempt property remaining in a debtor's hands would be subject to liquidation. Therefore, because the creditors would benefit from the increased value if the estate were actually liquidated at the plan amendment date, "it is most logical to read § 1329 to require such a result in a hypothetical liquidation under the best interest test."[29]

This Court agrees with my former colleagues that *Barbosa* adopts the better answer to the question of the effective date of the plan for purposes of applying the best interest test to allowance of an amended plan under § 1329. The *Forbes* solution, that because the plan as amended becomes the plan,

---

[28] *Id.* at *3.

[29] *Id.*

15

there is only one effective date, the date of the original plan, has superficial appeal because of its simplicity. But it freezes the test on the original plan date and renders the application of the best interests test to plan modifications meaningless. It fails to promote the purpose of the best interest test and does not account for the § 348 principles regarding conversion from Chapter 13 to Chapter 7.

### D.    Property Interests Included in the Best Interest Test

However, finding that the effective date of the plan for application of the best interest test is the date of the amended plan does not require the Court grant the Trustee's Motion. *Nott* and *Villegas*, the cases relied on by the Trustee holding that the effective date of the plan is the modification date and that property acquired postpetition is included in the best interest hypothetical liquidation test as of that date, utilize the expanded definition of property of the estate in § 1306. The Court rejects this approach and holds that § 348(f), not § 1306, controls the property to be included in the hypothetical liquidation.

Section § 348(f) provides that the property of a Chapter 7 estate resulting from a good faith conversion from Chapter 13 consists of property of the estate as of the date of filing of the petition that remains in the debtor's possession or control at the time of conversion. The converted estate excludes §

16

1306 property; if Debtor's case were converted to Chapter 7, unsecured creditors would not benefit from the settlement of Debtor's postpetition personal injury claim.[30] The hypothetical liquidation calculated under the best interest test should be conducted assuming the same estate. That liquidation is determined by reference to what a Chapter 7 trustee would produce for unsecured creditors if the estate were liquidated at the time of the postconfirmation modification. Section 348(f) would be applicable to such a liquidation, and it therefore controls when applying the best interest test to postconfirmation modifications of Chapter 13 plans.

An established principle of statutory construction supports application of § 348(f) rather than § 1306 to define the estate. Section 1306 is a general statute augmenting the estate defined in § 541 for Chapter 13 cases. Section 348(f) is a specific statute defining property of the estate in a case converted from Chapter 13 to Chapter 7. The hypothetical liquidation included in the best interest test assumes conversion of the Chapter 13 case to Chapter 7. In accord with the well established canon of statutory construction that the

---

[30] The legislative history accompanying the addition of § 348(f) to the Code in 1994 states that it adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3rd Cir. 1985), and overrules the holding of *Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991). H.R. Rep. No. 103-835, 57 (1994). *Bobroff* held that on conversion from Chapter 13 to Chapter 7, a postpetition tort claim inured to the benefit of the debtor, not the Chapter 7 trustee. *Lybrook* held that a postpetition reconversion to Chapter 7 inheritance became property of the Chapter 7 estate.

17

specific controls the general,[31] § 348(f) controls the hypothetical liquidation, rather than § 1306. Debtor's postpetition personal injury claim did not exist on the date of filing; its proceeds would not be available to a Chapter 7 trustee, and are excluded from the best interest test calculation.

Although the majority position appears to be inclusion of postpetition windfall property in the best interest calculation based upon *Barbosa*, several commentators reject this result. The *Lundin on Chapter 13* treatise observes that the outcomes of cases holding that postpetition windfalls can be captured for the benefit of creditors avoid a result that some courts find "unpalatable" and "are driven more by policy considerations than by analysis of the Code."[32] He notes that although excluding windfall property produces harsh outcomes for creditors, "[n]o prepetition creditor has any (reasonable) expectation of payment from such property"[33] and exclusion of the windfall promotes the fresh start policy.

Another Chapter 13 practice guide states, "Code § 348(f) thus controls application of the best interest test when a party seeks modification even if

---

[31] *E.g., RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, <u>566 U.S. 639, 645</u> (2012).

[32] Keith M. Lundin, *Lundin on Chapter 13* § 122.2, at ¶¶ 3, 6, LundinOn Chapter13.com (last visited June 24, 2021).

[33] *Id*. ¶ 12.

18

the 'effective date' for doing so is the modification date."[34] The guide notes that using the effective date of the plan as amended properly takes into account the different treatment in § 348(f) of postpetition acquired property, which is excluded from the converted estate, and the original valuations, which do not carryover to the Chapter 7 converted case.

The *Collier on Bankruptcy* treatise, without reliance on § 348(f), also concludes that postpetition property is excluded from the recalculation of the best interest test at the time of modification. After noting that the best interest test applies to modified plans, the treatise states:

> This does not mean, however, that the value of property owned by the debtor at the time of the modification is considered. The best-interests test turns on what would have happened had the debtor filed a chapter 7 case instead of a chapter 13 case. If a chapter 7 case had been filed, only property of the estate under section 541 would have been available to creditors and not the additional property that became property of the estate under section 1306(a). Therefore, property acquired after the petition, other than the limited types that become property of the estate under section 541, is not relevant to application of section 1325(a)(4) to a proposed plan modification.[35]

---

[34] W. Homer Drake, Jr., Paul W. Bonapfel & Adam M. Goodman, *Chapter 13 Practice & Procedure* § 11:9 (2021) (available on Westlaw).

[35] 8 *Collier on Bankruptcy* ¶ 1329.05 (Richard Levin & Henry J. Sommer eds., 16th ed.).

19

### E.    The Chapter 13 Trustee's Motion is Denied

The Chapter 13 Trustee's Motion for approval of an amended plan requiring turnover of proceeds from the settlement of Debtor's postpetition personal injury claim is denied. The sole premise of the amendment is the Trustee's contention that the claim and the proceeds from its settlement are property of the estate under § 1306 and therefore must be included in the hypothetical liquidation as of the effective date of the amended plan. As explained above, the Court agrees with the Trustee that the best interest test applies to a modified plan and the effective date of the plan for calculation of the distribution to unsecured creditors in a hypothetical liquidation is the date of the amendment. However, in reliance on § 348(f), the Court holds that the postpetition personal injury claim is not included in the calculation. The best interest test does not provide authority for turnover of the proceeds for payment to unsecured creditors under an amended plan.

### III.   Conclusion

For the foregoing reasons, the Court denies the Trustee's Motion. The proposed amended plan is not approved. Bankruptcy Judges Robert D. Berger and Mitchell L. Herren agree with the foregoing analysis. This opinion

20

represents the legal conclusions of all of the Judges of the Bankruptcy Court for the District of Kansas.

The portion of the settlement proceeds being held in escrow may be released to Debtor when denial of the Trustee's Motion becomes a final, non-appealable order.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

**Judgment**

Judgment is hereby entered denying the Trustee's Motion to Modify Chapter 13 Plan pursuant to 11 U.S.C. § 1329.[36] The judgment based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**It is so ordered.**

**###**

---

[36] Doc. 47.

21